UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID RETAMAR,<br>    *Plaintiff*,<br><br>v.<br><br>ROBERT W. BONETTI (L.P.N.), *et al.*<br>    *Defendants*. | No. 3:22-cv-859 (VAB) |

## INITIAL REVIEW ORDER

David Retamar ("Plaintiff"), a sentenced[1] *pro se* inmate in the custody of the Department of Correction ("DOC"), filed this this civil rights Complaint[2] under 42 U.S.C. § 1983 against Licensed Practical Nurse ("LPN") Robert Bonetti, Advanced Practice Registered Nurse ("APRN") Akina Richards, Registered Nurse ("RN") Hollie Goode, Dr. Franceso Lupis, and Dr. Cary Freston. Compl., ECF No. 1, ECF No. 1-1, ECF No. 1-2 (July 8, 2022). His Complaint alleges Eighth Amendment claims of medical deliberate indifference and state law negligence. *Id.*

For the following reasons, the Court will permit Mr. Retamar to proceed on his Eighth Amendment claim for damages against Dr. Freston in his individual capacity. All other claims are **DISMISSED without prejudice**, and Defendants Goode, Bonetti, Richards, and Lupis are **DISMISSED** from this action.

---

[1] The Court may "take judicial notice of relevant matters of public record." *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The publicly-available Connecticut DOC website shows that Mr. Retamar was sentenced on September 26, 2019, to a sentence of seven years and that he is currently housed at MacDougall-Walker Correctional Center ("MacDougall"). *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=275142.

[2] Mr. Retamar paid the filing fee for this case on September 6, 2022.

1

I.      **FACTUAL BACKGROUND**[3]

Mr. Retamar has allegedly received dialysis for his kidneys three times a week while incarcerated at MacDougall. Compl., ECF No. 1, at ¶¶ 2–3.

On May 13, 2020, the dialysis center allegedly tried unsuccessfully to administer him treatment by sticking two needles into his bicep. *Id.* at ¶ 7. However, the needles allegedly could not draw any blood out of his arm due to a graft on his bicep. *Id.* He was allegedly sent to the emergency room at UCONN hospital to have his arm assessed. *Id.* at ¶ 8.

At the hospital, he was allegedly told that the graft on his left arm was clogged. *Id.* at ¶ 9. Hospital staff allegedly had to use wires, a balloon, and a stent to unclog the graft. *Id.* at ¶ 10. Hospital staff allegedly noticed that the graft (a rubber tube inserted in his left upper bicep) had a small hole and required fixing with a stent. *Id.* at ¶¶ 11–12. After they allegedly completed that procedure, hospital staff allegedly ensured that the graft in his left bicep had blood flow so that he could receive his dialysis treatment. *Id.* at ¶ 13.

Before Mr. Retamar's discharge, hospital staff allegedly informed him that he had to return to the hospital in six to eight weeks to check for particles and assess his pressure. *Id.* at ¶¶ 14–15.

The medical notes from UCONN Hospital (attached to the Complaint) state: "It is suggested that the patient return in 6 to 8 weeks for a repeat arteriovenous fistulogram to monitor the remaining pseudoaneurysm and to obtain pressure measurements in the left arm

---

[3] All factual allegations are drawn from the complaint. ECF No. 1; ECF No. 1-1; ECF No. 1-2.

venous outflow to evaluate for any residual, hemodynamically significant, stenosis." Compl. Ex. A, ECF No. 1-1 at 4–5, 6.[4]

The UCONN medical notes were allegedly provided to Mr. Retamar's medical provider, APRN Richards, at MacDougall upon Mr. Retamar's return to custody. Compl., ECF No. 1, at ¶¶ 16–17. Mr. Retamar also believes that Dr. Lupis and LPN Bonetti were provided with a copy of the medical notes from Mr. Retamar's hospital visit on May 13, 2020. *Id.* at ¶¶ 19, 20.

On May 13, 2020, RN Goode was allegedly responsible for setting up appointments for MacDougall inmates. *Id.* at ¶ 18. However, Mr. Retamar was allegedly not provided an appointment at UCONN Hospital within six to eight weeks of his May 13, 2020, hospital visit. Compl., ECF No. 1-2, at ¶ 39.

On August 5, 2020, after Mr. Retamar allegedly started to feel chills and unwell, he was allegedly assessed by DOC medical staff who gave him antibiotics and sent him to the UCONN Hospital emergency room because his left upper bicep was swollen, red and hot. *Id.* at ¶¶ 15, 18. No ambulance was called for him because the DOC medical staff considered such a measure to be unnecessary. *Id.* at ¶ 16.

Although his body was in extreme pain, especially at his left bicep, Mr. Retamar was allegedly placed in a black box and a belly chain and handcuffed by a correctional officer because Dr. Freston had allegedly failed to inform correctional staff about his condition. *Id.* at ¶ 17. Mr. Retamar was allegedly later driven to UCONN Hospital by DOC van. *Id.* After he arrived at the emergency room, Mr. Retamar was allegedly handcuffed to the bed by his

---

[4] The page numbers cited to in this Order regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

right arm and left leg. *Id.* at ¶¶ 20, 22. The correctional staff allegedly ignored his cry expressing that his back was in serious pain as his body was shivering. *Id.* at ¶ 22.

Test results allegedly showed that Mr. Retamar had an infection in the bicep where he receives dialysis. *Id.* at ¶¶ 26–27.

Mr. Retamar was allegedly admitted and placed on antibiotics, but he did not improve overnight. *Id.* at ¶ 28. The next day, a doctor allegedly explained that the graft on his left bicep was infected and would have to be removed. *Id.* at ¶ 30. She also allegedly explained that his arm might need to be cut off. *Id.*

Mr. Retamar was allegedly later brought to the surgery room, prepped, and provided with a consent form that he signed. *Id.* at ¶ 33–34. After Mr. Retamar woke up post-surgery, the doctor allegedly informed him that his arm was saved and asked why he had not come for an appointment after his May 13, 2020 hospital visit. *Id.* at ¶¶ 36–37. He allegedly told the doctor that he was in DOC custody and could not make an appointment as only DOC staff at MacDougall could make such appointments. *Id.* at ¶¶ 45–46.

The doctor then allegedly told him to put a wound vac on his left bicep to help his wound recover faster and prevent reinfection. *Id.* at ¶¶ 47–51.

Mr. Retamar allegedly has a permanent scar from his surgery. *Id.* at ¶ 52.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner

Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

### III. DISCUSSION

Because Mr. Retamar's lawsuit does not specify whether Defendants are sued in their individual or official capacities, or the relief sought, the Court will construe Mr. Retamar's Complaint as asserting claims against Defendants LPN Bonetti, APRN Richards, RN Goode, Dr. Lupis, and Dr. Freston in their individual capacities for damages. As a result, the Court will consider whether Mr. Retamar has alleged any plausible claims for damages based on Eighth Amendment violations against these defendants.

To do so, Mr. Retamar must allege that any Defendant against whom he seeks damages has direct personal involvement in an Eighth Amendment violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991))); *see Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (In order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official.").

#### A. The Eighth Amendment Deliberate Indifference to Medical Needs Claim

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take

reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). A defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Thus, a defendant's mere negligence is not cognizable on an Eighth Amendment deliberate indifference claim. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). Although "mere medical malpractice is not tantamount to deliberate indifference," such medical malpractice may constitute deliberate indifference when it "involves culpable recklessness, i.e., . . . a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553) (cleaned up).

      a.    **Objective Element**

For initial review purposes, the Court assumes that Mr. Retamar's infection constituted a serious medical condition so as to satisfy the objective element.

      b.    **Subjective Element**

The Court now must determine whether Mr. Retamar has alleged that any defendant acted with a sufficiently culpable state of mind. *See Carpenter*, 316 F.3d at 184.

For purpose of initial review, the Court construes Mr. Retamar's Complaint as alleging that his medical providers, APRN Richards, LPN Bonetti, and Dr. Lupis all received the medical notes from UCONN Hospital. Compl. at ¶¶ 16–17, 19–20.

1. **Defendants Goode, Bonetti, Richards, and Dr. Lupis**

Mr. Retamar has not alleged that any Defendant ignored signs that he had an infection. Instead, his Complaint appears to claim that Defendant Goode acted with deliberate indifference by not scheduling him for a return visit to UCONN Hospital and that Defendants APRN Richards, LPN Bonetti, and Dr. Lupis acted with conscious disregard to his serious medical needs by failing to ensure his return hospital appointment.

Mr. Retamar's allegations indicate that the hospital staff had instructed that he "would have to return" to the hospital in six to eight weeks (ECF No. 1 at ¶ 4), but the attached hospital medical notes stated: "it is suggested that the patient return in 6 to 8 weeks[.]" Ex A, ECF No. 1-1 at 4–5, 6. Because the medical note suggested only that Mr. Retamar have a follow-up appointment, but did not direct that such appointment be provided as part of his medical care, as a matter of law, Defendant Goode did not act with deliberate indifference by failing to schedule Mr. Retamar's hospital appointment. *See Fernandez v. Fed. Bureau of Prisons*, No. 99 CIV. 4944 (VM), 2001 WL 913929, at *2 (S.D.N.Y. Aug. 13, 2001) (allegations that prison medical staff failed to follow emergency room physicians' "Aftercare Suggestions" were insufficient to establish deliberate indifference); *cf. Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (holding that prison officials exhibit deliberate indifference when they deliberately defy a prisoner's doctor's "express instructions").

Mr. Retamar has not alleged she knew that Mr. Retamar required a return visit appointment or that she consciously ignored any emergent medical condition and failed to schedule him for medical treatment. *See Iqbal*, 556 U.S. at 683 (requiring the plaintiff to provide "more by way of factual content to nudg[e] his claim . . . across the line from conceivable to plausible" (alteration in original) (internal quotation marks omitted)).

8

Likewise, the present record fails to suggest that Defendants APRN Richards, LPN Bonetti, and Dr. Lupis consciously disregarded Mr. Retamar's medical needs by failing to ensure that he received a return appointment to UCONN Hospital six to eight weeks from his prior hospital visit. Mr. Retamar has not alleged that they ignored his developing infection or other condition necessitating medical attention or that they were aware he required a hospital visit before August 5, 2020. As a result, Mr. Retamar has not plausibly alleged facts to show that Defendants Goode, Bonetti, Richards, and Lupis acted with the requisite culpable state of mind to satisfy the subjective element.

Accordingly, the Court must dismiss his Eighth Amendment claims against these Defendants as not plausibly alleged. *See* 28 U.S.C. § 1915A.

### 2. **Defendant Dr. Freston**

The Complaint alleges that Dr. Freston's failure to inform the correctional officers about Mr. Retamar's medical status resulted in his being restrained in a painful manner during his transport to the hospital and upon arrival to the hospital emergency room. Construed most broadly, the Complaint's factual allegations suggest that Dr. Freston's conscious disregard of Mr. Retamar's painful medical condition exacerbated the suffering that he experienced due to his infection. *See Germano v. Dzurenda*, No. 3:09CV1316 SRU, 2011 WL 1214435, at *13 (D. Conn. Mar. 28, 2011) (failure to inform other prison officials about the severity of the plaintiff's mental health condition "could plausibly constitute deliberate indifference to an excessive risk to Germano's health and safety").

Accordingly, the Court will permit Mr. Retamar to proceed on his Eighth Amendment claim for damages against Dr. Freston for further development of the record.

### B.     The State Law Negligence Claim

Mr. Retamar also alleges negligence because he almost lost his arm. But Mr. Retamar cannot hold Defendants liable for their allegedly negligent conduct, even if it constitutes medical malpractice, which is considered to be "a type of negligence claim." *Acevedo v. Ruiz*, No. 3:18-CV-1583 (VLB), 2018 WL 6181350, at *2 (D. Conn. Nov. 27, 2018).

Defendants are state employees who are protected from suits for negligence under Connecticut General Statutes section 4-165 ("No state officer or employee shall be personally liable for damages or injury, not wanton or reckless or malicious, caused in the discharge of his duties or within the scope of his employment."). Mr. Retamar's allegations indicate that Defendants were acting within the scope of their duties, and there are no factual allegations suggesting wanton, reckless or malicious conduct to defeat immunity under section 4-165. *See Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

Accordingly, any state law claims of negligence must be dismissed as not plausible. *See* 28 U.S.C. § 1915A(b).

## ORDERS

The Court enters the following orders:

(1) The case shall proceed on Mr. Retamar's Eighth Amendment individual capacity claim for damages against Dr. Freston.

All other claims are **DISMISSED without prejudice**, and Defendants Goode, Bonetti, Richards, and Lupis are DISMISSED from this action.

If Mr. Retamar can allege facts sufficient to cure the deficiencies identified in this Initial Review Order, he may file a motion to amend and attach an Amended Complaint by **November**

**25, 2022**. He is advised that any Amended Complaint will completely replace the prior Complaint in the action, and that no portion of any prior Complaint shall be incorporated into an Amended Complaint by reference. All Defendants against whom he asserts claims must be named in the case caption.

(2) As he is not proceeding *in forma pauperis*, Mr. Retamar is responsible for serving the Complaint on Dr. Freston in his individual capacity by **January 20, 2023**. Failure to effect service on Dr. Freston within the time specified may result in the dismissal of this action.

The Clerk of Court is directed to send Mr. Retamar instructions for service of the Complaint on Dr. Freston in his individual capacity, together with one copy of the Complaint, one copy of this Initial Review Order, one blank Notice of Lawsuit forms, and one blank Waiver of Service of Summons forms.

(3) Mr. Retamar shall effect service of the Complaint on Defendant Freston in his individual capacity by mailing a Notice of Lawsuit form, a Waiver of Service of Summons form, a copy of the complaint, and a copy of this order to each Defendant Freston at his current work address (e.g., the facility where Defendant Freston currently works).

Plaintiff shall file a notice with the Clerk of Court indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms to Dr. Freston in his individual capacity. He shall also file the signed Waivers of Service of Summons form that he receives from Defendant Freston in his individual capacity with the Clerk of Court.

(4) The clerk shall mail a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) Defendant Freston shall file his response to the Complaint, either an Answer or motion to dismiss, by **January 13, 2023**. If Defendant Freston chooses to file an Answer,

Defendant Freston shall admit or deny the allegations and respond to the cognizable claims recited above. Defendant Freston may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed by **May 5, 2023**. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by **June 9, 2023**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Mr. Retamar changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Retamar must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Retamar has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendant or defense counsel of his new address.

(11) Mr. Retamar shall utilize the Prisoner Efiling Program when filing documents with the court. Mr. Retamar is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L.

Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

      **SO ORDERED** at Bridgeport, Connecticut, this 14th day of October, 2022.

                                           /s/ Victor A. Bolden
                                           VICTOR A. BOLDEN
                                           UNITED STATES DISTRICT JUDGE